O

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. SACV 10-1123 DOC |
|---|---|
| Plaintiff(s), | SACR 04-0309 DOC |
| v. | **O R D E R** DENYING DEFENDANT MICHAEL MCDONNELL'S |
| MICHAEL MCDONNELL, | MOTION FOR CORRECTION OF SENTENCE 28 U.S.C. § 2255 |
| Defendant(s). | |

Before the Court is Defendant Michael McDonnell ("Mr. McDonnell")'s Motion ("Motion") for Correction of Sentence Pursuant to 28 U.S.C. § 2255 (Docket 2). The Court has considered the moving, opposing, and replying papers, as well as the supplemental briefing submitted, and hereby DENIES the Motion.

**I.  Background**

Mr. McDonnell was convicted in a jury trial on October 20, 2005 of various counts related to his participation in a scheme to improperly convert housing units to condominiums

and obtain title insurance for the condominiums. The condominiums were then sold to the public. Mr. McDonnell was convicted of counts including Wire Fraud, Bank Fraud, and, relevant for this Motion, Honest Services Fraud. This Court sentenced Mr. McDonnell to a term of 78 months, based on a finding of an Adjusted Offense Level of 28, which, in turn, was determined by using the Base Offense Level for Honest Services Fraud (10) and an 18 level increase based on the Specific Offense Characteristics. The resulting sentence was based on an Adjusting Offense Level of 28, which provided a guideline range of 78-97 months.

Mr. McDonnell appealed his conviction and sentence to the Ninth Circuit Court of Appeals, which, on May 13, 2008 affirmed his conviction. The Court of Appeals also vacated Mr. McDonnell's sentence and remanded it to this Court for re-sentencing. Following the Ninth Circuit's ruling, the government reached a plea agreement with Mr. McDonnell to reduce the Specific Offense Characteristics to a 16 level increase and to leave the Base Offense Level at 10 for an Adjusted Offense Level of 26. This Adjusted Offense Level provided for a guideline sentence of 63-78 months. The parties subsequently agreed upon a sentence of 68 months. That stipulation included a waiver through which Mr. McDonnell "also agree[d] to give up any right to bring a post-conviction collateral attack on the conviction or sentence, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel." Parties' Sentencing Stipulation, at 3-4.

**II.     Legal Standard**

28 U.S.C. § 2255 permits federal prisoners to file motions to vacate, set aside, or correct a sentence on the ground that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. Where the petitioner does not allege lack of jurisdiction or constitutional error, relief under Section 2255 is inappropriate unless the alleged error resulted in a "complete miscarriage of justice or in a proceeding inconsistent with the rudimentary demands

of fair procedure." *Hamilton v. United States*, 67 F.3d 761, 763-64 (9th Cir. 1995).

**III. Discussion**

Mr. McDonnell brings the present Motion in light of the recent Supreme Court decision of *Skilling v. United States*, in which the Court held that a conviction for Honest Services Fraud must be based on an underlying offense involving bribery or kickbacks. __ U.S. __, 130 S. Ct. 2896 (2010); *United States v. Pelisamen*, No. 10-10022, 2011 WL 1378640 (9th Cir. Apr. 13, 2011). The decision further clarified that applying 18 U.S.C. § 1346 to allow a conviction for Honest Services Fraud that did not involve bribery or kickbacks would be an unconstitutional due process violation. *Skilling*, 130 S. Ct. at 2928.

Mr. McDonnell brings the present Motion–filed within one year of the Supreme Court's issuance of the *Skilling* decision–and argues that the *Skilling* decision warrants a sentence adjustment to eliminate the Base Offense Level for Honest Services Fraud, thereby reducing the sentencing guideline range from 63-78 months to 41-51 months. *See* Motion, 3.

The government raises three main objections to Mr. McDonnell's Motion: that Mr. McDonnell has waived his right to bring this Motion; that the Motion is procedurally barred; and that the Motion fails on the merits. The Court addresses each of these arguments in turn.

**A. Waiver**

The government argues that pursuant to its stipulation with Mr. McDonnell, Mr. McDonnell waived his right to bring any collateral appeals other than challenges based on ineffective assistance of counsel.

Mr. McDonnell has not waived his right to *this* appeal; it would be unconscionable for this Court to find a waiver of a right that did not exist when the waiver occurred. In considering whether to adopt the stipulation with the government, Mr. McDonnell no doubt assessed the platter of potential claims that he could have brought based on the law as it stood at that time.

After evaluating his potential claims, Mr. McDonnell chose to waive his right to pursue a habeas petition on any claim other than ineffective assistance of counsel. In making that evaluation, Mr. McDonnell was, of course, limited to the circumstances and laws that existed at that time; he likely determined that, based on those circumstances, he did not have a claim worth bringing. Since that time, however, the Supreme Court of the United States has issued the *Skilling* decision, a ruling that Mr. McDonnell believes declared unconstitutional a portion of his sentence. *See Skilling v. United States*, __ U.S. __, 130 S. Ct. 2896 (2010) (holding that Section 1346 criminalizes only Honest Services Fraud cases involving bribery or kickbacks).

It is obvious that Mr. McDonnell's thought process in deciding whether to agree to a stipulation limiting his ability to collaterally challenge his sentence would have differed had he known that the statute under which he had been convicted possibly did not apply to the facts of his case. Indeed, it would be unreasonable to have expected Mr. McDonnell to foresee a major, on-point Supreme Court decision. The Court therefore refuses to bind Mr. McDonnell to a waiver that occurred before the *Skilling* decision was issued.

Nonetheless, the government points to several cases in support of its claim that waivers are absolute. These cases are easily distinguishable.

In *United States v. Abarca*, the Supreme Court upheld a similar waiver of the ability to bring a collateral attack. 985 F.2d 1012 (9th Cir. 1993). In that case, however, the defendant wanted to collaterally attack his sentence based on newly discovered exculpatory evidence. Unlike in Mr. McDonnell's circumstance, at the time of Mr. Abarca's motion, the Supreme Court had not declared new, relevant law that might have implicated his conviction and sentence. *Id.* Indeed, the Court in *Abarca* specifically noted that "we do not hold that [the defendant's] waiver categorically forecloses him from bringing any Section 2255 proceeding" but found that "the degree of his culpability" had been contemplated by the waiver. *Id.* at 1014. Mr. McDonnell's challenge differs; his challenge is not based on the "degree of his culpability," information which would, of course, be known to him at the time of his decision to waive collateral attacks. Rather, Mr. McDonnell's Motion is based on a dramatic Supreme Court decision which narrowed the scope of the very statute under which he had been convicted. Mr.

McDonnell could not have reasonably contemplated such a change in the law.[1]

The other cases cited by the government are similarly inapposite. *United States v. Singleton* upheld a waiver when the defendant tried to bring a collateral attack on double jeopardy grounds. 897 F. Supp. 1268, 1273 (N.D. Cal. 1995). *United States v. Nguyen* involved a defendant's attempt to withdraw a guilty plea. 235 F.3d 1179, 1182 (9th Cir. 2000). Neither of these cases involved a challenge based on new Supreme Court jurisprudence. Indeed, neither of these cases involved a challenge based on any sort of new information.

As a result, Mr. McDonnell has not waived his right to bring the present Motion.

### B. Procedural Bar

The government also contends that Mr. McDonnell is procedurally barred from bringing his Motion due to his failure to raise his concerns about the Honest Services Fraud statute in prior proceedings. The government asserts that Mr. McDonnell's "failure to raise an issue before the district court and the court of appeals on direct review amounts to a procedural default of that claim." Government's Motion to Dismiss and Response in Opposition to Defendant's Motion for Relief ("Opposition"), 7. The government is wrong; its logic would render the appeals process absurd.

As a threshold matter, Mr. McDonnell's claim is not barred by *Teague v. Lane*, which held that new constitutional rules of criminal procedure do not apply retroactively unless they are "watershed" cases or "place[] 'certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe' . . . ." 489 U.S. 288, 310-11 (1989) (quoting *Mackey v. United States*, 401 U.S. 667, 692 (1971) (Harlan, J., concurring in part and

---

[1] Similarly, courts have also granted relief under Section 2255 when a statute governing an underlying conviction has been deemed unconstitutional. *See, e.g., Russell v. United States*, 306 F.2d 402 (9th Cir. 1962) (vacating a judgment and sentence under Section 2255 after finding that 26 U.S.C. § 5841 abridged the defendant's Fifth Amendment right).

5

dissenting in part)). *Teague* applies only to procedural rules. *Bousley v. United States*, 523 U.S. 614, 620 (1998); *United States v. Benboe*, 157 F.3d 1181, 1183 (9th Cir. 1998). The Court in *Skilling*, announced a *substantive* rule in that it declared unconstitutional the application of a statute to certain factual scenarios. *Skilling*, 130 S. Ct. (establishing that a conviction for Honest Services Fraud must be based on an underlying offense involving bribery or kickbacks). Therefore, the *Skilling* decision may apply retroactively. *See United States v. Jaramillo*, No. 09-50480, 2011 WL 560399 (9th Cir. Feb. 15, 2011); *see also Rodrigues v. United States*, CV. No. 10-00406 DAE-KSC, CR. No. 01-00078 DAE, 2011 WL 529158, *8 (D. Haw. Jan. 31, 2011) ("*Skilling* must apply retroactively to criminal convictions under 18 U.S.C. § 1346.").

Nonetheless, defendants may be procedurally barred from bringing collateral attacks when they failed to raise factual issues or other considerations of which they could have been aware on direct appeal. *See United States v. Frady*, 456 U.S. 152, 162 (1982) (finding that defendant procedurally defaulted when he did not object to jury instructions at trial or on direct appeal); *United States v. Johnson*, 988 F.2d 941 (9th Cir. 1993). But the government mistakenly relies on those cases involving procedural bars to suggest that Mr. McDonnell has defaulted based on the facts at issue in this case. Unlike *Frady* and *Johnson*, Mr. McDonnell has not raised issues he could have raised on direct appeal; rather, Mr. McDonnell presents new issues resulting from a fundamental shift in the law that occurred subsequent to his trial and direct appeal. *See Skilling*, 130 S. Ct. It is, of course, stating the obvious to note that Mr. McDonnell could not have been aware of a future Supreme Court decision.

The Court finds *Kimes v. United States* instructive. 939 F.2d 776 (9th Cir. 1991). In *Kimes*, the defendant was convicted of involuntary servitude by means of psychological coercion. *Id.* at 778. Following the conviction, "the Supreme Court announced that psychological coercion is not sufficient to bring a defendant's conduct within the purview of the statute forbidding involuntary servitude." *Id.* (citing *United States v. Kozminski*, 487 U.S. 931 (1988)). The Supreme Court narrowed the scope of the statute under which the defendant was convicted by limiting it to situations involving physical or legal coercion. *Id.* (citing *Kozminski*, 487 U.S.). Subsequently, the defendant in *Kimes* appealed her conviction. *Id.* at 777. The Ninth

Circuit held that the *Kozminski* decision required it to grant defendant's Section 2255 motion if the conviction was "based upon evidence of psychological coercion." *Id* at 778. The Court concluded that the "[defendant's] failure to object . . . [was] not fatal to her petition, since well settled law precluded her claim at the time." *Id.*

Like the defendant in *Kimes*, Mr. McDonnell brings his Motion in light of new Supreme Court precedent. Like *Kozminski*, *Skilling* narrowed the scope of the statute under which Mr. McDonnell was convicted. Consistent with the Ninth Circuit's decision in *Kimes*, the fact that Mr. McDonnell failed to foresee *Skilling*'s significant amendment of 18 U.S.C. § 1346 is not fatal to his Motion.

As emphasized above, Mr. McDonnell could not have foreseen that the Supreme Court would declare certain applications of the Honest Services Fraud statute unconstitutional. Moreover, a requirement that Mr. McDonnell make arguments that would have been groundless at the time of trial or appeal would be perverse. Defendants in all cases would then be obligated to raise every argument they could concoct at both trial and appeal simply to avoid a procedural default. This would undermine the interests of judicial economy; the flooding of motions with little legal bases would be unduly burdensome and wasteful of courts' limited time and resources. Thus, as in *Kimes*, Mr. McDonnell is not procedurally barred from bringing this Motion.

Even assuming, *arguendo*, that Mr. McDonnell had procedurally defaulted, he is not necessarily barred from bringing his claim. A court may consider a Section 2255 motion in spite of a procedural default when there is cause for the failure to previously raise the issue and a resulting prejudice, or when there is a showing of actual innocence. *Bousley*, 523 U.S. at 622; *Frady*, 456 U.S. at 168. It is beyond doubt that there is good cause for Mr. McDonnell's failure to raise his challenge to the Honest Services Fraud conviction and sentence in his direct appeal; there would have been no basis for him to have done so based on the existing case law at the time of his trial and appeal. *See Jaramillo*, WL 560399 at *2 (excusing defendant's failure to raise a *Skilling* challenge to his conviction in his opening brief of his appeal because it was "filed prior to the *Skilling* opinion").

In *Reed v. Ross*, the Supreme Court held that "the cause requirement may be satisfied under certain circumstances when a procedural failure is not attributable to an intentional decision" of strategy made by defendant or his counsel. 468 U.S. 1, 14 (1984). In other words, when a defendant or his or her counsel would have no reasonable basis to raise a constitutional challenge at trial or on appeal, there is sufficient cause to excuse a failure to do so. *Id.* at 15. For that reason, defendants are not expected to raise a "truly novel issue" simply to avoid a procedural default. *Id.*

The government relies on *Bousley* for the proposition that the truly novel exception does not apply to the facts at issue in Mr. McDonnell's Motion. The Court in *Bousley* found that no cause existed for a procedural default under *Reed* where the defendant pled guilty to "using" a firearm five years before the Supreme Court clarified that proof of use required a showing of "active employment" of the weapon, rather than mere possession. *See Bousley*, 523 U.S. at 616. In reaching its decision, the Court specified that the argument about the interpretation of the word "use" was not novel at the time of the defendant's plea; many district courts had already adopted the interpretation of the statute later endorsed by the Court in that case. *Id.* at 622. To be sure, the Court in *Skilling* noted that before its ruling, there was "considerable disarray" as to how Section 1346 applied, and court decisions were "not models of clarity or consistency." *Skilling* 130 S. Ct. at 2905, 2928. Yet *Skilling* did not go so far as to suggest that Mr. McDonnell's challenge was prevalent prior to its ruling. More importantly, unlike in *Bousley*, the Court in *Skilling* did not merely raise the requirements for a showing of guilt; rather, the Court declared unconstitutional the very application of the statute that Mr. McDonnell argues led to his conviction and sentence. Thus, Mr. McDonnell has more than sufficient cause for failing to raise the claim on appeal.

The government further argues that Mr. McDonnell had no cause to excuse his procedural default because, under *Bousley*, futility of raising an issue does not constitute sufficient cause. *See* 523 U.S. at 623. Yet *Bousley* stood only for the proposition that "futility cannot constitute cause if it means simply that a claim was 'unacceptable to that particular court at that particular time.'" *Id.* (quoting *Engle v. Isaac*, 456 U.S. 107 (1982)). The Court in *Bousley* was addressing

a situation in which the defendant could have raised an existing objection. *Id.* at 622 (noting that "the Federal Reporters were replete with cases involving [the objection].") In this case, as discussed above, there was no legitimate basis for raising Mr. McDonnell's claim prior to *Skilling*.

As discussed, Mr. McDonnell did not procedurally default because his challenge could not have been raised prior to the *Skilling* decision. Alternatively, Mr. McDonnell had cause to procedurally default. The prejudice prong, or merits of the Motion, is addressed in the next section.

### C. Merits

In a final attempt to defeat Mr. McDonnell's Motion, the government insists that the Motion fails on the merits. This Court agrees. Mr. McDonnell appears to offer three arguments in support of his Motion. First, Mr. McDonnell asserts that the "charging documents" did not allege a bribery or kickback scheme, which he claims are "the only types of conduct which would now be actionable violations under 18 U.S.C. § 1346." Motion, 3. Second, Mr. McDonnell claims that even if the charging documents alleged a scheme of bribery or kickbacks, his conviction is nonetheless unconstitutional because he was not alleged to have *received* or *solicited* any bribes. Mr. McDonnell's Reply to Government's Response to the District Court's April 5, 2011 Minute Order ("McDonnell's Supp. Brief"), 4. Finally, Mr. McDonnell argues that he did not owe honest services to anyone and thus could not be convicted under the Honest Services Fraud statute.[2] *Id.* Each of these agreements falls short.

Mr. McDonnell's first argument is inconsistent with the factual record. To be sure,

---

[2]Although Mr. McDonnell does not make this argument explicitly, the Court presumes that Mr. McDonnell is suggesting that owing a fiduciary duty is requisite to violating 18 U.S.C. § 1346. *See* Mr. McDonnell's Reply to Government's Opposition to the Motion for Correction of Sentence ("Mr. McDonnell's Reply"), 6; McDonnell's Supp. Brief, 4.

9

*Skilling* established that to be convicted of Honest Services Fraud under 18 U.S.C. § 1346, the charged crime must involve bribery or kickbacks. *See* 130 S. Ct. at 2931. Mr. McDonnell contends that "the charging documents did not allege either 'bribery' or a 'kickback scheme'" and Mr. McDonnell's conviction is therefore unconstitutional. Motion, at 3. However, it appears that Mr. McDonnell's Final Trial Indictment[3] ("Final Indictment") did charge Mr. McDonnell with participating in a bribery scheme:

> [D]efendant Du Bose would personally receive a payment either as part of the conversion fee from Defendant Benson or directly from the apartment building owner. Defendants Benson, *McDonnell*, Houchen, Richey, Crandall and others *designed these payments to induce, and did induce, defendant Du Bose to breach his duty of honest services to Stewart Title and write title policies falsely assuring that the units sold were legitimate condominiums.* Had Stewart Title known what [defendants] knew, that the condominiums were fraudulently converted, it would not have issued title insurance.

Final Indictment, ¶ 55. The Final Indictment clearly alleged that Mr. McDonnell helped bribe Mr. Du Bose by designing payments "for the purpose of improperly obtaining or rewarding favorable treatment" in the form of title insurance. *Skilling*, 130 S. Ct. at 2934 (citing 41 U.S.C. § 52(2) for definition the of the term "kickback"). Consequently, Mr. McDonnell's conviction falls within the realm of crimes actionable under *Skilling*'s interpretation of 18 U.S.C. § 1346.

Mr. McDonnell's second argument is a spin-off of the first: Mr. McDonnell asserts that "[t]he indictment does not allege, and facts do not show that Mr. McDonnell *received* any bribes or kickbacks." McDonnell's Supp. Brief, 4 (emphasis added). In other words, Mr. McDonnell argues that *Skilling* only permits Honest Services Fraud convictions where the defendant is alleged to have *received* bribes or kickbacks. Though Mr. McDonnell is correct to point out that neither he nor the defendant in *Skilling* were charged with soliciting or accepting bribes, Section

---

[3] Mr. McDonnell's original motion cited "Counts 32-37" as the counts corresponding to the Honest Services Fraud charges. Motion, 5. By contrast, the government cited "Counts 55-60" as the counts corresponding to the Honest Services Fraud charges. Opposition, 4. On April 5, 2011, the Court issued a Minute Order requesting supplemental briefing to clarify this discrepancy. (Docket 8). The parties' briefing confirmed the inconsistencies and identified the different versions of the indictment. In this Order, the Court cites only to the Final Trial Indictment, in which Counts 55-60 correspond to the Honest Services Fraud charges.

1346 does not require one to *receive* a bribe to be convicted for Honest Services Fraud. Mr. McDonnell's contention rests upon a narrow interpretation of *Skilling* that this Court and others are unwilling to adopt. Instead, *Skilling* contemplates that a defendant can be guilty of Honest Services Fraud when he or she *pays* a bribe rather than merely *receives* one.

To be sure, the *Skilling* decision did not explicitly address whether one must receive a bribe to be convicted under Section 1346. Though the majority of cases to which Section 1346 applies involve defendants who *received* a bribe, *Skilling* did not limit the statute to such circumstances. *Skilling* 130 S. Ct. at 2905. To the contrary, the Court in *Skilling* approvingly cited many cases in which defendants *paid* a bribe. *See, e.g., United States v. Urciuoli*, 613 F.3d 11 (1st Cir. 2010) (upholding a Section 1346 conviction of a company for bribing a state senator); *United States v. Rybicki*, 354 F.3d 124 (2d Cir. 2003) (affirming a Section 1346 conviction of attorneys who bribed insurance company employees to expedite their clients' claims); *United States v. Mandel*, 591 F.2d 1347 (4th Cir. 1979) (finding proper private individuals' conviction for bribing a governor); *Shushan v. United States*, 117 F.2d 110 (5th Cir. 1941) (upholding a conviction of entrepreneurs who bribed a public official).

Moreover, the Court in *Skilling* repeatedly talked about mere "participation" in a bribery or kickback scheme. *See, e.g., Skilling*, 130 S. Ct. at 2905 (noting that "the vast majority of cases involved offenders who . . . *participated* in bribery or kickback schemes.") (emphasis added); *id.* at 2934 (referencing "[a] criminal defendant who *participated* in a bribery or kickback scheme . . . .") (emphasis added). The Court's repeated language suggests that participation in a bribery or kickback scheme is sufficient for a Section 1346 conviction. *See also Pelisamen*, 2011 WL 1378640, at *4 ("[T]he Supreme Court held in *Skilling* that a defendant may not be convicted of honest-services fraud, except in cases *involving* bribes or kickbacks.") (emphasis added). Thus, the fact that Mr. McDonnell did not *receive* a bribe does not exculpate him from Honest Services Fraud liability.

Finally, Mr. McDonnell argues that he did not owe a duty of honest services to the City of Huntington Beach or to Stewart Title and, therefore, cannot be guilty of Honest Services Fraud. Mr. McDonnell's Reply to Government's Opposition to the Motion for Correction of Sentence

("Mr. McDonnell's Reply"), 6; McDonnell's Supp. Brief, 4. Mr. McDonnell appears to be suggesting that one must owe a fiduciary duty to violate 18 U.S.C. § 1346. Because he owed no such fiduciary duty, Mr. McDonnell contends that he could not have violated the statute. This argument, however, conflicts with the plain language of the statute and the Supreme Court's interpretation in *Skilling*.

Section 1346 applies to one who engages in a "scheme" to deprive others of honest services. 18 U.S.C. § 1346. There is no statutory requirement that Mr. McDonnell actually owe honest services; he need only engage in a scheme to deprive others of honest services. This point is illustrated by *United States v. Rybicki*, 354 F.3d, a case cited approvingly by the Court in *Skilling*. 130 S. Ct. at 2929. In *Rybicki*, two lawyers were convicted under 18 U.S.C. § 1346 for bribing insurance company employees to expedite the settlements of the lawyers' clients' claims. 354 F.3d at 127. The defendants were convicted for "scheming to deprive the insurance companies of their intangible right of honest services of their employees." *Id.* Although the defendants owed no honest services to the insurance companies, the Court held that the defendants were properly convicted because they "enable[d] an officer or employee of a private entity . . . purporting to act for and in the interests of his or her employer . . . secretly to act in his or her or the defendant's own interests instead." *Id.* at 141-42. In essence, the Court concluded that the situation in which a defendant causes one to deprive another of honest services "fall[s] squarely within the meaning" of Section 1346. *See also Urciuoli*, 613 F.3d (affirming defendants' conviction for bribing a state senator to breach his fiduciary duty to the public).

Mr. McDonnell's case is remarkably similar. Just as the defendants in *Rybicki* bribed insurance company employees in order to obtain expedited settlements, Mr. McDonnell bribed an insurance company employee to improperly obtain title insurance. Like the defendants in *Rybicki*, Mr. McDonnell owed no fiduciary duty to the insurance company. However, as discussed above, Mr. McDonnell need not owe a fiduciary duty to be convicted of Honest Services Fraud. He is guilty of Honest Services Fraud by bribing a third-party to breach his or her fiduciary duty to another. *See, e.g., Rybicki*, 354 F.3d; *Urciuoli*, 613 F.3d.

Because Mr. McDonnell participated in a bribing "scheme or artifice to deprive another

of the intangible right of honest services," his conviction under 18 U.S.C. § 1346 for Honest Services Fraud withstands the *Skilling* decision. Accordingly, Mr. McDonnell's conviction remains valid.

**IV.  Disposition**

For the foregoing reasons, the Court DENIES Mr. McDonnell's Motion.

IT IS SO ORDERED.

DATED: June 20, 2011

                                                                         */s/ David O. Carter*
                                                                        DAVID O. CARTER
                                                                      United States District Judge